IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 18, 2014

**TAMIR CLARK v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Rutherford County**
**No. F-70407     M. Keith Siskin, Judge**

_____

**No. M2014-00618-CCA-R3-PC - Filed December 18, 2014**

_____

The Petitioner, Tamir Clark, pleaded guilty to especially aggravated kidnapping, arson, especially aggravated robbery, and attempted robbery, and the trial court sentenced him to serve twenty-five years in the Tennessee Department of Corrections. The Petitioner filed a petition for post-conviction relief, in which he alleged that he had received the ineffective assistance of counsel and that his guilty plea was not knowingly and voluntarily entered. The post-conviction court dismissed the petition after a hearing. On appeal, the Petitioner contends that the post-conviction court erred when it dismissed his petition, maintaining that he received the ineffective assistance of counsel and that his guilty plea was not knowingly and voluntarily entered. After a thorough review of the record and applicable law, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

Thomas H. Bray, Murfreesboro, Tennessee, for the appellant, Tamir Clark.

Herbert E. Slatery, III, Attorney General and Reporter; Meredith Devault, Senior Counsel; William Whitesell, District Attorney General; J. Paul Newman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

This case arises from the victim, Latorcia Clark, being robbed, kidnapped, and her car being set on fire. The Petitioner, the victim's stepson, was indicted for offenses related to

this incident.

## A. Guilty Plea Hearing

At the guilty plea submission hearing, the State offered the following summary of the evidence supporting the Petitioner's guilty plea:

[O]n or about the 29th day of October, 2010, [the Petitioner] did break into the home of Latorcia Clark, who is his stepmother. The home was located [at] 2607 Lincoya Drive here in Rutherford County and the State of Tennessee.

While inside [the Petitioner] did attack Ms. Clark. Did render her unconscious at times when she was attacked. Did bind her hands and feet. Placed an object in her mouth, and covered her head.

At a point later, she was also dragged from the residence and put into the back seat of a vehicle, which was parked in the driveway of the residence. The vehicle was her . . . vehicle at her residence.

[The Petitioner] also stabbed Ms. Clark approximately four times in the buttocks area and did make the statement that she was "going to die tonight, bitch," according to the testimony of the officer that would have been called.

Shortly thereafter, [the Petitioner] apparently attempted to try to steal the vehicle, and at some point got frustrated, started a fire in the front compartment of the vehicle. The vehicle did catch fire. At some point, the husband did come home, saw the fire, and was able to remove her from the vehicle. After he removed her from the vehicle, the vehicle did explode. And there was damage to not only the vehicle, but the house was also caught on fire.

All of these events did occur here in Rutherford County, State of Tennessee, and prior to the return of this indictment. And the especially aggravated kidnapping, it was accomplished by a weapon that did result in serious bodily injury.

The State then announced the proposed plea agreement including the negotiated sentences. It stated that, in exchange for the Petitioner's pleas, it would dismiss four

2

additional charges against him.

The Petitioner testified at the guilty plea submission hearing that he had heard the facts articulated by the State and that those facts were basically correct. He confirmed that he was entering the guilty plea freely and voluntarily and that his attorney had done a "good job" for him. He stated that he understood the range of punishment for each of his offenses and the State's burden of proof. The trial court informed the Petitioner of his rights, and the Petitioner acknowledged understanding those rights. He testified that he was guilty of the offenses to which he was pleading guilty.

The State interjected that it had neglected to articulate during its recounting of the facts that "there was property taken from [the victim] illegally, which would constitute the robbery."

The trial court found:

> Sir, first, I'm going to find you guilty of aggravated kidnapping. Sentence you to 25 years as a Violent, 100 Percent Offender. Counts 5, 7, and 8 will run concurrent with that. But it will run consecutive to your parole violation. That will be a sentence to serve. . . .
>
> Next, I'm going to find you guilty of the offense of arson. Sentence you to 5 years as a . . . Standard, 30 Percent Offender. That will be a sentence to serve as well. It will run concurrent with the other cases, except the parole violation will run consecutive. . . .
>
> Next, I'm going to find you guilty of especially aggravated robbery. Sentence you to 25 years at 100 percent. It will run concurrent with 2, 5, and 8 of the indictment, but consecutive to the parole violation. . . .
>
> Next, I'm going to find you guilty of attempted first degree murder. Sentence you to 25 years as a Standard, 30 Percent Offender. It will run concurrent with 2, 5, and 7, but consecutive to the parole violation.
>
> Based upon your pleas in Felony Number 66462, I'll dismiss Counts 1, 3, 4, and 6 without any cost to you.

The Petitioner said he did not have any questions.

## B. Petition for Post Conviction Relief

3

The Petitioner filed a petition seeking post-conviction relief. In it, he asserted that his attorney ("Counsel") was ineffective because he failed to inform the Court that the Petitioner was currently taking a "mind altering medication during the plea negotiation." He asserted that, based upon his drug addiction and mental health considerations, he was in "no position to enter a knowing and intelligent guilty plea."

At a hearing on the petition, the Petitioner testified that he was incarcerated on these charges for two years before he entered his guilty plea. He said that he had been diagnosed with paranoid schizophrenia and that, at the time of his plea, he was taking medication to address this mental illness. He said he did not understand what was happening and that, at the time, he believed that Counsel had his best interest "at heart" and was "doing his job." He said that after he went to the penitentiary, he did research and "things didn't add up."

The Petitioner testified that Counsel never came to see him after he was appointed to represent him. He said that he attempted to fire Counsel, but he was told that Counsel had health issues. He gave Counsel "another chance," but the two still had very few communications. The Petitioner said that Counsel came and talked to him twice. The Petitioner recalled times when he went to court, and Counsel was not present.

The Petitioner said that Counsel told him the charges to which he was pleading guilty but that Counsel never explained the essential elements of those offenses. The Petitioner further stated that he was taking Thorazine the day he entered his guilty plea, which made him drowsy and slow to comprehend what was happening. He said that he did not "register[]" everything Counsel was saying to him. He did not comprehend what was happening until later. The Petitioner said that he was no longer on Thorazine because the prison budget did not allow for this medication. He said the medication he was taking was "not as strong as the Thorazine," so he could understand "everything now."

The Petitioner said he and Counsel never discussed the Petitioner's mental health history. He thought Counsel was aware of and had reviewed the Petitioner's mental health records. Counsel told the Petitioner that he would have a psychologist come and talk to him, but the psychologist never came.

The Petitioner said that Counsel explained to him the charges he faced and the minimum and maximum punishment. The Petitioner, however, did not understand what Counsel was saying. The Petitioner said he did not understand that he would be sentenced as a Career Offender. The Petitioner said his plea should be set aside because of the medication he was taking at the time he entered the plea.

During cross-examination, the Petitioner testified that he pleaded guilty to the offenses

4

he was charged with because he was guilty of those offenses. He agreed he never told Counsel that he was innocent of those charges. The Petitioner agreed that he was first represented by another attorney from the Public Defender's Office and that his first attorney had him evaluated by Middle Tennessee Mental Health Institute. This was a thirty-day evaluation that included an evaluation for schizophrenia and competency to stand trial.

The Petitioner agreed that he wrote the letter asking Counsel to be removed from his case while he was taking Thorazine. He said that someone helped him write the letter but that he knew what he wanted the letter to say.

The Petitioner said that Counsel discussed the evidence against him, including the DNA evidence. Counsel expressed to him that the Petitioner was not likely to be successful at trial. The Petitioner said that he remembered the day that he pleaded guilty. He remembered the trial court asking him questions, and he remembered giving answers. The Petitioner said that Counsel read to him the plea petition and that he understood what it said at the time.

During redirect examination, the Petitioner testified that he did not comprehend anything during the guilty plea submission hearing because of his medication. He said that his guilty plea was not therefore knowingly and voluntarily entered.

Counsel testified that he was appointed to represent the Petitioner. He said that, as an assistant public defender, he had represented more than a thousand defendants. Counsel first encountered the Petitioner in the late 1990s or early 2000s when he represented the Petitioner in juvenile court. Counsel said that he had read the Petitioner's mental health evaluations but that in his dealings with the Petitioner he "never thought he didn't understand what [Counsel] was saying to him."

Counsel said that the Petitioner's mental health evaluation that his first attorney requested was part of the file. He had reviewed the result of that evaluation. Counsel estimated that he met with the Petitioner between ten and fifteen occasions. The two discussed the evidence against the Petitioner, including all of the discovery. Counsel said that he could still recall the evidence against the Petitioner because "it was so devastating to his case."

Counsel said that, while the Petitioner was incarcerated pending his trial, the Petitioner had written a letter to the Petitioner's father. In the letter he apologized to his father for what he had done and explained that the devil had made him do it. Counsel discussed with the Petitioner that the letter would likely be admissible at trial.

5

Counsel said he discussed the State's plea offer with the Petitioner at length. The Petitioner appeared to understand the offer. Counsel said he reviewed the guilty plea petition with the Petitioner, and the Petitioner did not seem to have trouble understanding that document. Counsel said that it was the Petitioner's decision to plead guilty. He said that he had informed the Petitioner that, given the severity of the charges he faced and the evidence incriminating him, if the Petitioner did not plead guilty there was a chance he would die in prison. He said that when he discussed the State's offer with the Petitioner, they discussed the fact that, given the Petitioner's age, he would likely live to be released from prison and "have some life to live."

Counsel agreed that the Petitioner had been diagnosed with a mental disorder before he committed the offenses in this case. Counsel said that the defenses of insanity or diminished capacity had already been ruled out by the mental health evaluation done while the case was pending in general sessions court. Counsel said that he discussed with the Petitioner that it was the Petitioner's choice about whether to plead guilty. Counsel did not recall the Petitioner mentioning that he was taking medication, but he presumed from the results of the mental health evaluations that medication had likely been prescribed. Counsel said he explained to the Petitioner the minimum and maximum sentence he faced and also what the State had to prove in order to support a conviction for the charges against him.

Counsel agreed that he had a medical issue in May 2012 necessitating a medical leave for some period of time. He was unsure whether there was a significant period of time during which he did not communicate with the Petitioner.

Based upon this evidence, the post-conviction court dismissed the Petitioner's petition for post-conviction relief. The post-conviction court found:

> This Court finds that the Petitioner has failed to meet his burden of showing, by clear and convincing evidence, that his trial counsel's performance was deficient or that his guilty plea was not knowingly and voluntarily entered.
>
> With regard to [Counsel's] performance, Petitioner has not demonstrated by clear and convincing evidence that [Counsel] was ineffective in explaining his case to him or ineffective by not seeking an additional mental health evaluation. The Court finds [Counsel's] testimony to be credible. [Counsel] throughly explained the discovery, evidence, State's burden of proof, and the possible range of punishment to the Petitioner. The transcript of the plea hearing shows that the Petitioner told the Trial Judge that he had no gripes or complaints against [Counsel], and that [Counsel] had explained to

6

him the range of punishment, State's burden of proof, and any defenses he might have. . . . [Counsel] was very familiar with the Petitioner, due to his prior representation of the Petitioner in Juvenile Court, and was aware that the Petitioner had previously received mental health treatment and evaluations, both as a juvenile and at the General Sessions level in this case; nonetheless, in his interactions with the Petitioner, [Counsel] never thought that the Petitioner did not understand what he was telling him. [Counsel] likewise did not observe any behavior by the Petitioner that caused him to doubt the Petitioner's ability to understand the plea petition, or that caused the Petitioner any problems while answering the Trial Judge's questions during the plea acceptance hearing. [Counsel's] strategic decision to raise the Petitioner's mental health as a mitigating factor during the sentencing phase of the case was reasonable, considering that diminished capacity and insanity were ruled out at the General Session level. This Court finds that [Counsel] met and exceeded all standards of competency for criminal defense attorneys in Tennessee and any other state. Additionally, the court finds that [Counsel] fully apprised himself of the facts and law applicable to the Petitioner's case, and explored all potential strategies and defenses. [Counsel] was ready to try the Petitioner's case, but the Petitioner made a rational, informed, voluntary decision to enter a plea agreement instead.

With regard to the voluntariness of the guilty plea, the Petitioner argues that he was taking [T]horazine, which caused drowsiness and slow comprehension. However, the Petitioner never told his attorney, the District Attorney, or the Trial Judge that he was taking this medication. Moreover, the trial judge carefully explained all of the Petitioner's rights before accepting his plea, and specifically inquired as to whether the Petitioner was entering the plea freely and voluntarily, whether the Petitioner understood the negotiated plea agreement, and whether the Petitioner had any questions about the agreement. . . . Only after satisfying himself as to these factors did the Trial Judge accept the Petitioner's plea and approve the agreement. . . . Although the Trial Judge did not specifically ask the Petitioner whether he was taking any medications during the plea colloquy, the Petitioner has provided this Court with no authority to suggest that such is required. The Trial Judge in this case was satisfied, based upon his questioning of the Petitioner in open Court, that the plea was entered knowingly and voluntarily; this Court finds no proof to the contrary. Moreover, it is well-settled that a petitioner's bare allegations, unsupported by medical testimony, about the use of psychiatric drugs is insufficient to support a claim that a guilty plea was not knowingly and voluntarily entered. *See* State v. [Darrell Wayne] Bumpas, [No. M2010-

7

00222-CCA-R3-CCA-R3-PC,] 2010 WL 5140673 (Tenn. Crim. App. 2010), perm app. denied 4/14/11.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that his guilty plea was not knowingly or voluntarily entered because it was based upon the ineffective assistance of counsel. He asserts that Counsel was ineffective because he failed to have the Petitioner mentally evaluated. Further, he asserts that he was under the influence of medication that affected his ability to comprehend at the time that his guilty pleas were entered and that, therefore, they were not knowingly or voluntarily entered.

## A. Ineffective Assistance of Counsel

On appeal, the Petitioner contends that the post-conviction court erred when it denied his petition because he received the ineffective assistance of counsel because Counsel failed to have him mentally evaluated. The State responds that the post-conviction court properly found that Counsel's performance was not deficient.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2014). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2014). The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates against it. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland,* 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation." *House*, 44 S.W.3d at 515 (quoting *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, the *Strickland* prejudice requirement mandates that a petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In the matter at hand, Counsel did not request a mental evaluation for the Petitioner because the Petitioner's original attorney, who also worked for the Public Defender's Office, had already done so. Counsel said that the mental evaluation was part of the Public Defender's file and that he had reviewed that record. The evaluation ruled out a defense of insanity or diminished capacity. Counsel said that he and the Petitioner had discussed having him undergo another mental evaluation to use as part of sentencing. The parties agreed to a sentence as part of the plea agreement, so this evaluation was not done. Under these circumstances, we agree with the post-conviction court that the Petitioner has not shown that Counsel's decision in this regard fell below a reasonable standard. He further has not proven that he was prejudiced by any of Counsel's decisions. The Petitioner is not entitled to relief on this issue.

**B. Guilty Plea**

The Petitioner also argues that the post-conviction court erred when it dismissed his petition because his guilty plea was not knowingly and voluntarily entered because he was taking Thorazine at the time he entered his plea.

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). The court reviewing the voluntariness of a guilty plea must look to the totality of the circumstances. *See State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). A plea resulting from ignorance, misunderstanding, coercion, inducement, or threats is not "voluntary." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). A petitioner's solemn declaration in open court that his plea is knowing and voluntary creates a formidable barrier in any subsequent collateral

proceeding because these declarations "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)

As noted above, the post-conviction court credited the testimony of Counsel. The post-conviction court found that the Petitioner willingly entered into the plea agreement after he had been advised of the consequences of not doing so. Counsel informed the Petitioner of the strength of the State's case against him, which included DNA evidence, a witness identification, and a letter of confession written by the Petitioner to his father. The State dismissed four counts against the Petitioner in exchange for his plea. Counsel reviewed the plea with the Petitioner privately and felt that the Petitioner did not have any trouble understanding the proposed plea agreement or the proceedings. The trial court questioned the Petitioner during the guilty plea submission hearing and reviewed with the Petitioner the rights he was waiving by entering a guilty plea. The Petitioner acknowledged that the trial court explained his rights and the plea agreement to him and that Counsel explained the plea agreement to him. We conclude that the evidence supports the post-conviction court's finding that the Petitioner entered his guilty plea knowingly and voluntarily. He is not entitled to relief.

### III. Conclusion

After a thorough review of the record and the applicable law, we conclude the post-conviction court properly dismissed the Petitioner's petition for post-conviction relief. Therefore, in accordance with the foregoing reasoning and authorities, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE

11